UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: MAR 0 5 2015

---

MARYAM SAYIGH,

                Petitioner,

-against-

PIER 59 STUDIOS, L.P. and FEDERICO PIGNATELLI,

                Respondents.

---

No. 11-CV-1453-RA

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner commenced this employment discrimination action in the Supreme Court of the State of New York, New York County, on August 30, 2010, pursuant to the New York State Human Rights Law, Executive Law § 296 et seq. (the "SHRL") and the Administrative Code of the City of New York, § 8-101 et seq. (the "CHRL"). See Notice of Removal, Sayigh v. Pignatelli, 11-CV-1453 (S.D.N.Y. March 3, 2011), ECF No. 1. On March 3, 2011, Respondents removed the case to this Court based on diversity of citizenship. Id. On May 10, 2013, this Court granted Respondents' motion to compel arbitration and stayed the case pending arbitration. Opinion and Order, Sayigh v. Pignatelli, 11-CV-1453 (S.D.N.Y. May 10, 2013), ECF No. 39.

On March 12, 2014, Arbitrator Ira Cure (the "Arbitrator") issued an Opinion and Award (the "Opinion and Award") denying all of Petitioner's claims save one and awarding her $5,000 plus attorneys' fees. (Aronoff Decl. Ex. B ("Opinion & Award").) After additional briefing was submitted, the Arbitrator issued an Attorneys' Fees Award (the "Fee Award"), awarding Petitioner $5,474 in attorneys' fees and $4,985.39 in costs. (Serrins Decl. Ex. 2 ("Fee Award").)

Presently before the Court is Petitioner's motion to vacate and modify the Fee Award, and to confirm the Opinion and Award. Respondents consent to confirmation of the Opinion and Award but otherwise oppose Petitioner's motion. Respondents also seek sanctions against Petitioner. For the following reasons, Petitioner's motion to vacate and modify is denied, although the Court will confirm the Opinion and Award and Fee Award with the addition of pre- and post-judgment interest, as described below. Respondents' request for sanctions is denied.

## BACKGROUND

### I.    Factual Background

The facts of this case are long and conflicting. Only a brief summary is recounted here, as set forth in the Arbitrator's Opinion and Award.

Respondent Pignatelli is the principal officer of Respondent Pier 59, a photo studio complex primarily serving the fashion and advertising industries. (Opinion & Award at 4.) In or about June 2008, Petitioner began her employment with Pier 59 as Pignatelli's assistant. (Id. at 6, 36.) Petitioner was terminated in 2009. (Id. at 19-20.)

Petitioner claimed that while employed with Pier 59, she was subjected to a work place "where female employees were referred to as girls, and attractive women received preference in hiring. She claim[ed] that she was subjected to offensive remarks . . . [including] Pignatelli's comments about his sex life." (Id. at 25.) Petitioner also alleged that she was required to accept Pignatelli's harassment, which included being forced to stay in Pignatelli's room, having sex with Pignatelli, observing Pignatelli nude, and being required to introduce Pignatelli to other women. (Id.) Additionally, Petitioner alleged that John DeNota, who was in charge of the physical space at Pier 59, made statements degrading women and urging Petitioner to sleep with Pignatelli. (Id.

at 6, 25.) Finally, Petitioner claimed that she was fired in retaliation for her opposition to Pignatelli's discriminatory behavior and that the retaliation continued after her termination with a threat from Pignatelli to "watch it" and Pignatelli's order that Pier 50 employees not communicate with Petitioner. (Id. at 22, 27.)

## II.    Arbitrator's Opinion and Award

In her Statement of Claim filed with the American Arbitration Association, Petitioner alleged six claims for relief. Claims 1 through 3 alleged violations of the SHRL for (1) creation of a hostile work environment, (2) quid pro quo sexual harassment, and (3) retaliation. (Id. at 2.) Claims 4 through 6 alleged violations of the CHRL for (4) hostile work environment, (5) discrimination for refusing to engage in sexual relations with Pignatelli and strict liability for Pier 59, and (6) retaliation. (Id.)

After several days of hearings, submissions of post-hearing briefs, written responses to questions from the Arbitrator, and oral argument, the Arbitrator denied all of Petitioner's claims except for one portion of the hostile work environment claim under the CHRL. (Id. at 3, 35-50.) In so doing, the Arbitrator rejected all of Petitioner's claims against Pignatelli, resolving almost all credibility and evidentiary disputes in Respondents' favor. More specifically, the Arbitrator made plain that he "does not conclude that [Petitioner] is a victim of sexual harassment or that her testimony should be fully credited" (id. at 36-37); that "the Respondents' position is supported by [deposition testimony] that [Petitioner] was very disturbed that she was terminated, and wanted revenge against the Respondents and against Mr. Pignatelli in particular" (id. at 39); and that Pier 59 had legitimate, non-discriminatory grounds for terminating Petitioner. (Id. at 48).

Petitioner was successful on only one portion of one claim: DeNota's creation of a hostile work environment in violation of the CHRL (the "DeNota Claim"). In that regard, the Arbitrator

found that DeNota's "direction to [Petitioner], that she sleep with Mr. Pignatelli constitutes action-able sexual harassment." (Id. at 44.) The evidence relevant to DeNota centered on the testimony of Deborah Jackson, Pier 59's Chief Operating Officer, and an email chain in which Ana Schechter, another employee, stated that DeNota said to her, Petitioner, and others, in reference to Pignatelli, that "[y]ou have to get your job done, if that means sleeping with him, or going and living in his apartment with him, so be it." (Id. at 16.) Petitioner was copied on the email chain but did not directly complain to Jackson, who was also on the chain. (Id.) Petitioner testified that she was "mortified" by these statements and that she believed that Pignatelli told DeNota that they had slept together. (Id.) As a result of these emails, DeNota was terminated immediately thereaf-ter. (Id. at 16, 45.)

The Arbitrator concluded that DeNota's prompt termination provided an affirmative de-fense under the SHRL but that under the broader CHRL, Petition was entitled to damages. (Id. at 45-46.) These damages, however, were "limited in scope" because Petitioner only testified as to one instance of abuse by DeNota and, aside from claiming that she was "mortified" by his com-ments, "did not identify any continuing psychological distress" resulting from DeNota's statements. (Id. at 46.) The Arbitrator specifically noted that because DeNota was an employee of Pier 59 and because there was no evidence that Pignatelli condoned DeNota's statements, only Pier 59 would be held liable for these damages. (Id. at 46 n.29.) The Arbitrator awarded Petitioner $5,000 and attorneys' fees "limited to the work her attorneys performed concerning [her] claims about Mr. DeNota." (Id. at 46.)

### III.    Arbitrator's Fee Award

The Arbitrator retained jurisdiction of the matter in order to resolve any disputes over at-
torneys' fees.  (Id. at 50.)[1]  Petitioner submitted a motion seeking attorneys' fees totaling
$196,425.86, plus costs of $22,174.63.  (Fee Award at 4.)  In addition, Petitioner sought $7,991.69
in fees for making the fee application.  (Id.)  Petitioner contended that she was entitled to fees
above and beyond the time her attorneys expended on the DeNota Claim – the only claim for which
she was successful – because the issues in the proceeding were so "intertwined" that it would be
"unjust to exclude the hours she expended in this matter even if those claims were found eventually
to be unsuccessful." (Id. at 5.)

In opposition, Respondents argued that the DeNota Claim was an "afterthought" and "not
central to [Petitioner's] core allegations." (Id. at 6.)  Respondents asserted that Petitioner's previ-
ous attorney – whose services were included in her fee application – had never made any mention
of DeNota in his work and that Petitioner "did not make any allegations concerning Mr. DeNota
until the Respondents produced an email chain in which employees other than [Petitioner] com-
plained to Ms. Jackson about Mr. DeNota's behavior." (Id.)  Respondents also noted that
Petitioner "made no effort to depose Mr. DeNota or seek additional document discovery concern-
ing his actions at Pier 59," nor did she make any mention of DeNota's behavior to either her own

---

[1] The Arbitrator retained jurisdiction over attorneys' fees despite a provision in the relevant arbitration clause
providing that the parties are to bear their own costs and fees because such a provision would "have the effect of
depriving [Petitioner] of her statutory rights under the New York City Administrative Code § 8-502(f)." (Id. at 46-
47.)  Section 8-502(f) (now relettered as 8-502(g)) provides that "[i]n any civil action commenced pursuant to this
section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees."  Retention
of jurisdiction to award attorneys' fees in this circumstance was warranted and consistent with this Court's Opinion
and Order compelling arbitration.  Opinion and Order at 10, Sayigh v. Pignatelli, 11-CV-1453 (S.D.N.Y. May 10,
2013), ECF No. 39 ("Courts in this Circuit have found that similar fee provisions did not preclude an arbitrator from
awarding attorney's fees to a prevailing party as part of a final award.").

expert or Respondents' expert. (Id.) Finally, Respondents contended that the testimony concerning DeNota was limited and the documentary evidence about him involved only a single email string. (Id.)

The Arbitrator sided with Respondents, finding Petitioner's "intertwined-ness" argument "unpersuasive." (Id. at 7.) He concluded that:

> [Petitioner] did not prevail on the vast majority of her claims. Of [Petitioner's] six claims only part of the claim alleging that Respondents created a hostile environment constituting sexual harassment and sexual discrimination in violation of the [CHRL] concerns Mr. DeNota. The remainder of the [c]laims either arise under the [SHRL] and/or specifically identify Respondent Pignatelli as the alleged bad actor. As noted each of those claims were denied. Moreover, the bulk of Claimant's allegations arising under the fourth claim were denied in the Award. . . . It is only that portion of the fourth claim concerning Mr. DeNota for which attorneys' fees may be awarded. These claims simply were not intertwined."

(Id. at 9.)

The Arbitrator then calculated the reasonable attorneys' fees due Petitioner, noting that "if a party does not prevail on each of his or her claims, 'a court may sever hours spent on unsuccessful and unrelated claims or apply an across the board time reduction.'" (Id. at 10 (quoting Kreisler v. Second Avenue Diner Corp., No. 10-CV-7592-RJS, 2013 WL 3965247, at *4 (S.D.N.Y. July 31, 2013) (citations omitted)).) Since Petitioner's attorneys did not segregate their fee application by claim – despite the Arbitrator's directive in his Opinion and Award that fees would be limited to the work concerning the DeNota Claim – the Arbitrator fashioned an "across the board time reduction" based on the number of pages of the hearing transcript containing references to DeNota. (Id. at 7-10.) The Arbitrator found that DeNota was referenced on 39 of the 1269 transcript pages, a total of 3%.[2] (Id. at 7.) Therefore, because Petitioner "succeeded on so few of her claims," and

---

[2] This total included references which did not support Petitioner's argument and those that were made in passing. (Id. at 7-8 (citing as an example a contractor's testimony that only tangentially mentioned DeNota, without reference to the discriminatory conduct at issue).)

because her attorneys did not otherwise separate out their time, the Arbitrator applied a 97% across the board reduction on the requested fees. (Id. at 10.)

Having established the methodology, the Arbitrator next determined the exact fee award. He reasoned that since Petitioner's previous attorney's work did not concern DeNota at all, the fees requested for his work would be subtracted from the total requested, leaving a balance of $182,467.36. (Id.) After applying the 97% reduction, he arrived at the total attorneys' fee award of $5,474.[3] (Id. at 11.)

The Arbitrator then noted that although the Opinion and Award only specifically awarded fees, it should have included an award for costs as well. He stated that "[t]hese costs are only awarded to the extent that [Petitioner] was successful." (Id.) He found that since Jackson's testimony was "integral to [Petitioner's] success, the only pre-hearing costs that will be awarded concern Ms. Jackson." (Id.) This sum included costs for Jackson's deposition, the costs for the hearing transcript for the day that she testified, and travel and hotel expenses. (Id.) The total costs awarded were $4,985.39. (Id.)

Finally, the Arbitrator found that no fees would be awarded for the making of the fee application because the application was "almost entirely unsuccessful . . . ." (Id.) In sum, the Arbitrator awarded a total of $10,459.39 for attorneys' fees and costs.

Petitioner filed the instant motion arguing that the Arbitrator erred in (1) reducing the fee application by 97% "without justification or adherence to applicable law"; (2) awarding partial costs without interest; and (3) denying an award of fees on the making of the fee application. (Pet.'s Br. at 3.) Respondents oppose these arguments and seek sanctions.

---

[3] The Arbitrator also concluded that the hourly rates for Petitioner's counsel were reasonable. (Id. at 10.)

## DISCUSSION

### I.     Legal Standard

Arbitration awards are "subject to very limited review . . . ." DiRussa v. Dean Witter

Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997) (internal quotation marks omitted).  "A party

moving to vacate an arbitration award has the burden of proof, and the showing required to avoid

confirmation is very high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

"The arbitrator's rationale for an award need not be explained, and the award should be confirmed

if a ground for the arbitrator's decision can be inferred from the facts of the case.  Only a barely

colorable justification for the outcome reached by the arbitrators is necessary to confirm the

award."  Id. (internal quotation marks and citations omitted).

The Federal Arbitration Act permits vacatur of an arbitration award in only four situations:

(1) where the award was procured by corruption, fraud, or undue means; (2) where there was

evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of miscon-

duct or misbehavior that prejudiced a party's rights; and (4) where the arbitrators exceeded their

powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

matter submitted was not made.  9 U.S.C. § 10(a).

In addition to these statutory grounds for vacatur, the Second Circuit has held that a court

may vacate an award if it finds that an arbitrator has acted in "manifest disregard of the law."  See,

e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339-40 (2d Cir. 2010).  An

arbitration award will be vacated for manifest disregard of the law only in "those exceedingly rare

instances where some egregious impropriety on the part of the arbitrator[] is apparent . . . ."

Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003).  That

impropriety means "more than error or misunderstanding with respect to the law, or an arguable

difference regarding the meaning or applicability of laws urged upon an arbitrator. Rather, the award should be enforced, despite a court's disagreement with it on the merits, if there is a <u>barely colorable justification</u> for the outcome reached." <u>T.Co Metals</u>, 592 F.3d at 339 (internal quotation marks and citations omitted) (emphasis in original).

In order to establish manifest disregard, a petitioner must show that (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrator[]"; (2) the law was "in fact improperly applied, leading to an erroneous outcome"; and (3) that the arbitrator "must have known of [the law], and its applicability to the problem before him." <u>Id.</u>

## II.    Application

As an initial matter, Respondents rightly point out that it is unclear what grounds for vacatur Petitioner is relying on. Petitioner variously asserts that the Arbitrator "committed clear error," "exceeded his authority," "exceeded his powers," "manifestly disregarded the law," and "engaged in misconduct prejudicial to the Plaintiff," without ever specifying how his errors meet the standards for vacatur established under each of these grounds. (<u>See</u> Pet.'s Br. at 1, 7, 9, 11, 14, 16, 20.) As to "clear error," there is no such ground for vacatur. As to the statutory grounds for vacatur – that the Arbitrator engaged in misconduct, 9 U.S.C. § 10(a)(3), or that he exceeded his powers, 9 U.S.C. § 10(a)(4) – Petitioner fails to make the requisite showing.

An arbitrator's actions constitute "misconduct" for purposes of the FAA where the arbitrator, "to the prejudice of one of the parties, rejects consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute, and the party would otherwise be deprived of sufficient opportunity to present proof of a claim or defense. The misconduct in that event amounts to a denial of fundamental fairness in the proceeding, and renders the resulting arbitral decision biased, irrational or arbitrary." <u>Fairchild Corp. v. Alcoa, Inc.</u>, 510 F. Supp. 2d 280, 287 (S.D.N.Y.

2007). Petitioner has made no argument that the Arbitrator denied "fundamental fairness" by "re-ject[ing] consideration of relevant evidence," nor does the record before the Court so suggest. Petitioner has therefore failed to establish vacatur on grounds of "misconduct."

As to the Arbitrator purportedly exceeding his powers, the focus of the inquiry under section 10(a)(4) is whether "the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided the issue." DiRussa, 121 F.3d at 824. "Accordingly, an arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second reaching issues clearly prohibited by law or by the terms of the parties' agreement." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011). Petitioner nowhere argues that in deciding the fee issue, the Arbitrator was considering issues beyond those presented to him or which he was prohibited to consider by law or contract.[4] Petitioner has therefore failed to establish vacatur on grounds of the Arbitrator exceeding his power.

Petitioner's only remaining stated ground for vacatur is manifest disregard of the law. Her arguments will therefore be analyzed under that "severely limited doctrine." Sotheby's Int'l Re-alty, Inc. v. Relocation Grp., LLC, 588 F. App'x 64, 65 (2d Cir. 2015).

**A.  The 97% Reduction in Fees**

As the Arbitrator recognized, the "central issue underlying [Petitioner's] application for attorneys' fees is whether or not she is entitled to an award of fees above and beyond the time expended on the claims related to Mr. DeNota." (Fee Award at 5.)  Petitioner argues that the Arbitrator "wholly disregarded the law on 'interrelated' claims and in a conclusory manner found that any allegation involving John DeNota 'simply were not intertwined' with any other cause of

---

[4] Indeed, as discussed at note 1, the Arbitrator was specifically empowered to award attorney's fees to a prevailing party, consistent with Section 8-502(g) of the New York Administrative Code.

action." (Pet.'s Br. at 14.)  Petitioner contends that at least some of her other claims were so "intertwined" with the DeNota Claim that fees must be awarded for work done on those claims as well.  (Id. at 16-18.)  Petitioner also contends that even accepting that a reduction was necessary, the 97% across the board reduction was not "in line with applicable case law," (id. at 18), and suggests instead a "reasonable across the board reduction of thirty-five percent." (Id. at 21.)  For these reasons, Petitioner argues that any award based on the 97% reduction must be vacated.  The Court disagrees.

        1.   The Arbitrator Did Not Manifestly Disregard the Law on "Intertwined" Claims

New York Administrative Code § 8-502(g) provides that "[i]n any civil action commenced pursuant to this section, the court, in its discretion, may award prevailing party costs and reasonable attorney's fees."  N.Y.C. Admin. Code § 8-502(g).  This provision is "indistinguishable from provisions in comparable federal civil rights statutes" and is thus interpreted "consistently with federal precedent." McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 428-29 (2004).

A plaintiff who has "prevailed" in litigation "has established only his eligibility for, not his entitlement to, an award of fees." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998). "The evaluation of what constitutes reasonable counsel fees has consistently been held to be a matter within the sound discretion of the court.  Similarly, the cutting of fees claimed is a proper exercise of discretion as well." McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 672 N.Y.S.2d 230, 231 (N.Y. Sup. Ct. 1997) (citations omitted).

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  "Fees may be awarded for unsuccessful claims when they are 'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'"

Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 303 (S.D.N.Y. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)); see also Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) (a partially successful plaintiff's fee award need not be reduced where "the successful and the unsuccessful claims were interrelated and required essentially the same proof"). "No fees should be awarded for time spent pursuing a failed claim if it was 'unrelated' to the plaintiff's successful claims in the sense that it was 'based on different facts and legal theories.'" LeBlanc-Sternberg, 143 F.3d at 762 (quoting Hensley, 461 U.S. at 434-35).

The Arbitrator accurately stated the foregoing standards regarding fees for unsuccessful claims and properly focused his analysis on whether Petitioner's claims were adequately "intertwined" with the DeNota Claim. (See Fee Award at 7, 9.) The Arbitrator noted that of Petitioner's six claims, only part of one claim alleging the creation of a hostile work environment in violation of the CHRL concerned DeNota and that the "remainder of the [c]laims either arise under the [SHRL] and/or specifically identify Respondent Pignatelli as the alleged bad actor." (Id. at 9.) The Arbitrator also noted Respondents' arguments that the DeNota Claim was an "afterthought" and "not central to [Petitioner's] core allegations." (Id. at 6.) Only after noting all of these considerations did the Arbitrator conclude that "[t]hese claims simply were not intertwined." (Id. at 9.)

Contrary to Petitioner's contention, therefore, the Arbitrator neither ignored the applicable law on interrelatedness of claims nor simply arrived at his disposition in a conclusory manner. Petitioner nevertheless contends that the Arbitrator ultimately erred in finding that her retaliation and DeNota-related SHRL claims were not intertwined. (Pet.'s Br. at 17-18.)[5]

---

[5] Petitioner concedes that her quid pro quo discrimination claims were not intertwined with her CHRL hostile work environment claim. (Pet.'s Br. at 18.)

Regarding the retaliation claim, Petitioner seems to rely on Coffey v. Dobbs Int'l Servs. Inc., 5 F. Supp. 2d 79, 86 (N.D.N.Y. 1998), rev'd on other grounds, 170 F.3d 323 (2d Cir. 1999), for the proposition that hostile work environment and retaliation claims are intertwined as a matter of law. (Pet.'s Br. at 18.)  Coffey does not support such a contention.  In that case, the court determined that the successful retaliation claim and the unsuccessful hostile work environment claim were intertwined because the plaintiff's theory was that the defendant retaliated against her for "complaining of the very same sexual harassment that was the subject of her unsuccessful claims." Coffey, 5. F. Supp. 2d at 86.  Here, by contrast, Petitioner's unsuccessful retaliation claims have nothing to do with her successful DeNota-related hostile work environment claim. Instead, the bases of her retaliation claims were her "opposition to Mr. Pignatelli's discriminatory behavior," and "Mr. Pignatelli's [post-termination] threat . . . and his order that Pier 59 employees not communicate with [her]." (Opinion & Award at 27 (emphasis added).)  These claims have no relation whatsoever to DeNota's creating a hostile work environment and are thus not intertwined with Petitioner's successful claim.

The Court agrees with Petitioner, however, that her DeNota-related CHRL claim is at least arguably intertwined with the DeNota-related SHRL claim.  As Petitioner points out, while the standards for finding liability under the City and State Human Rights Laws are different, "the facts and evidence supporting [the CHRL] hostile work environment [as they related to DeNota] were directly related to those supporting [the SHRL] hostile work environment [as they related to De-Nota]. In reaching his determination on both claims, the Arbitrator had to review the same set of facts." (Pet.'s Br. at 17.)  Indeed, this argument is borne out by the Opinion and Award, wherein the Arbitrator did in fact analyze the facts related to DeNota under both the SHRL and CHRL. (Opinion & Award at 44-46.)  Since "the successful and the unsuccessful claims were interrelated

13

and required essentially the same proof," Murphy, 118 F.3d at 952, the SHRL and CHRL claims as they related to DeNota should have been considered "intertwined."

Nevertheless, the Court's disagreement with the Arbitrator in this regard is insufficient to warrant vacatur under the "manifest disregard" doctrine. First, any mistake on the Arbitrator's part cannot said to be an "egregious impropriety" representing "more than error or misunderstanding with respect to the law," but merely an "arguable difference" over the application of the law. T.Co Metals, 592 F.3d at 339; see also Siegel v. Titan Indus. Corp., 779 F.2d 891, 892 (2d Cir. 1985) ("The erroneous application of rules of law is not a ground for vacating an arbitrator's award . . . ."). As discussed, Petitioner has not shown that the Arbitrator "ignored" the law, as she must in order to establish manifest disregard. T.Co. Metals, 592 F.3d at 339; see also Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 209 (2d Cir. 2002) ("The arbitrator must appreciate the existence of a clearly governing legal principle but decide to ignore or pay no attention to it." (internal quotation marks and alterations omitted)).

In sum, the Arbitrator did not manifestly disregard the law in determining whether Petitioner's successful claim was "inextricably intertwined" with her unsuccessful claims.

### 2.   The Arbitrator did not Manifestly Disregard the law in Applying a 97% Reduction

Petitioner concedes that some reduction in fees was appropriate, but argues that the 97% across the board reduction was improperly "mechanistic" and not "in line with applicable case law." (Pet.'s Br. at 14, 18.) This argument fails.

Relying on Dunlap-McCuller v. Riese Org., 980 F.2d 153 (2d Cir. 1992), Petitioner contends that the Second Circuit has advised against any "proportional" approach to fee reduction. (Pet.'s Br. at 14-15.) In that case, the court cautioned against awarding only 2% of the attorneys' fees sought solely because the party had recovered only 2% of what he was seeking, stating that

14

"this Court has consistently rejected the notion that an award of attorneys' fees be proportional to the amount of damages recovered." Dunlap-McCuller, 980 F.2d at 159-60. This case is inapposite because the Arbitrator did not fashion the Fee Award based on the amount of damages recovered.[6] Petitioner points to no authority otherwise holding that the Arbitrator's method of reducing the requested fee – by basing the reduction on the percentage of references to DeNota in the transcript – is clearly contrary to established law. See T.Co Metals, 592 F.3d at 339 (plaintiff must show that "the law that was allegedly ignored was clear"). Indeed, the Supreme Court has explicitly stated that "[t]here is no precise rule or formula" for reducing fees based on a party's degree of success and that the court "necessarily has discretion in making this equitable judgment." Hensley, 461 U.S. at 436-37. Although unusual, the Arbitrator's method for calculating the reduction is not a manifestly unreasonable proxy for the degree of Petitioner's success and the efforts her counsel expended on the DeNota Claim, given that claim's minor role in the litigation and Petitioner's failure to otherwise segregate out associated fees.

Petitioner next attacks the Fee Award for failing to apply the "prevailing approach [of] ascertain[ing] whether the unsuccessful claims arise from a common core of facts and to make reductions for factually distinguishable claims or conduct an across the board reduction if the plaintiff failed to adduce any evidence in support of the asserted claims." (Pet.'s Br. at 15.) Insofar as Petitioner is claiming that the Arbitrator ignored the "intertwined-ness" test, the Court has already rejected that argument. To the extent that Petitioner is contending that, as part of the "intertwined-ness" analysis, an across the board reduction is appropriate only where "plaintiff has failed to adduce any evidence in support of the asserted claims," Petitioner is mistaken. While the

---

[6] Petitioner's reliance on Separ v. Nassau County Dep't of Soc. Servs., 327 F. Supp. 2d 187, 192 (E.D.N.Y. 2004) is similarly unavailing. In that case, the court rejected an approach that would have applied "a percentage reduction based upon a comparison of the number of claims alleged and the one claim that ultimately succeeded." This, again, is not the approach taken by the Arbitrator.

court in Separ, on which Petitioner relies, justified its reduction on the fact that the plaintiff had "failed to submit any material evidence in support" of various causes of action, 327 F. Supp. 2d at 192, there is no suggestion that this is the only circumstance that justifies an across the board fee reduction. Indeed, even in cases Petitioner relies on elsewhere in her brief, the court did not base its fee reduction decision on whether the plaintiff failed to submit evidence, but on its discretionary determination of the degree of the plaintiff's success. See, e.g., Coffey, 5 F. Supp. 2d at 86 (20% reduction warranted because "[t]hough plaintiff prevailed on her retaliation claim, she was unsuccessful as to every other claim, largely due to her failure to prove damages").

Finally, Petitioner seems to argue that, accepting that a fee reduction is appropriate, a 35% reduction would be more "in line with applicable case law." (Pet.'s Br. at 18, 21.) This argument also fails. Petitioner relies on L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc., 865 F. Supp. 2d 284, 296-97 (E.D.N.Y. 2012) aff'd, 710 F.3d 57 (2d Cir. 2013) and amended, 956 F. Supp. 2d 402 (E.D.N.Y. 2013), which applied a 35% reduction, but in so doing, reiterated the well-established discretionary nature of the fee reduction determination, citing cases with 40%, 60% and 20% reductions, and stating that "[t]here is wide disparity in these 'reduction' rulings." Petitioner cites no other authority, and the Court is aware of none, that would deem the 97% reduction to be so aberrant as to warrant a finding of manifest disregard of the law, particularly given Petitioner's minimal success on a minor, peripheral issue. See, e.g., Betancourt v. Giuliani, 325 F. Supp. 2d 330, 334-35 (S.D.N.Y. 2004) (applying a 90% reduction where the plaintiff had "achieved virtually no success" and counsel "must have spent a nominal amount of time" on the one successful claim).

Such a large reduction was justified in this case given the tangential nature of the facts involved in the DeNota Claim. While all of Petitioner's claims generally pertained to sexual harassment or discrimination, the other claims, as the Arbitrator noted, "specifically identify . . . Pignatelli" – not DeNota – "as the alleged bad actor." (Fee Award at 9.) The facts underlying the DeNota Claim, by contrast, are entirely distinct from her core allegations. Indeed, Petitioner did not even mention DeNota in the Amended Complaint filed in this Court. See Amended Complaint, Sayigh v. Pignatelli, 11-CV-1453 (S.D.N.Y. March 22, 2011), ECF No. 4. And as Respondents point out, "[Petitioner] thought so little of the [DeNota] episode that she did not even list DeNota in her Rule 26(a)(1) Initial Disclosure . . . . Indeed, it appears that DeNota was not even on [Petitioner's] radar until Pier 59 produced [the email string referenced above]; after that document was produced, [Petitioner] served no follow-up discovery requests and made no effort to depose De-Nota." (Resp.'s Br. at 6-7.) The DeNota Claim thus does appear to have been an "afterthought" premised on a set of facts separate from the rest of Petitioner's suit. (Fee Award at 6.)

That Petitioner ultimately prevailed on that claim only marginally allays the magnitude of her overall failure. As stated above, the Arbitrator rejected all of her core allegations, i.e., those against Pignatelli. Moreover, her lack of success was, in large part, not a result of failing to establish a particular element of a claim or losing on a close question of law; instead, her testimony was simply not credited by the Arbitrator. (See, e.g., Opinion & Award at 36-37 ("the undersigned Arbitrator does not conclude that [Petitioner] is a victim of sexual harassment or that her testimony should be fully credited"), 38-39, 43.) In light of this high degree of failure, and only incidental success otherwise, the 97% reduction was justified. See De Los Santos v. Just Wood Furniture, Inc., No. 7:05-CV-9369-WWE, 2010 WL 445886, at *2 (S.D.N.Y. Feb. 2, 2010) (the "'quantity and quality of relief obtained,' compared to what plaintiff sought to achieve . . . are key factors in

determining the degree of success achieved" (quoting Barfield v. N.Y. City Health & Hosps. Corp.,

537 F.3d 132, 152 (2d Cir. 2008))).

Petitioner has failed to establish that applying a 97% fee reduction was in manifest disregard of the law.

### B. The Award of Costs

Petitioner next contends that the Arbitrator "erred in failing to grant the full measure of her

reasonable costs . . . ." (Pet.'s Br. at 11.)  The Court finds that the Arbitrator did not manifestly

disregard the law in awarding costs.

The New York Administrative Code provides for a discretionary award of "prevailing party

costs" in addition to attorneys' fees. N.Y.C. Admin. Code § 8-502(g).  An award of costs should

include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to

their clients." LeBlanc-Sternberg, 143 F.3d at 763.  By the Administrative Code's terms, these

costs, like attorney's fees, should be awarded only insofar as the party has "prevailed." See also

id. at 764 ("citizens must have the opportunity to recover what it costs them to vindicate [their]

rights in court" (emphasis added)).  The same "intertwined-ness" principles applicable to attorneys' fees for unsuccessful claims, as discussed above, also apply to costs. See Tatum v. City of

New York, No. 06-CV-4290-PGG, 2010 WL 334975, at *14 (S.D.N.Y. Jan. 28, 2010) (stating that

the "same logic" of the "inextricably intertwined" test "applies to reimbursable costs").

Here, the Arbitrator determined that because Petitioner only succeeded with regard to the

DeNota Claim, the only costs that would reasonably be awarded are costs associated with that

claim. (Fee Award at 11.)  Since Deborah Jackson's testimony was "integral" to Petitioner's success on this claim, the Arbitrator awarded costs only pertaining to Jackson, including costs for her

deposition, the cost of the hearing transcript for the day that she testified, and her travel and hotel expenses. (Id.)

Instead of the $4,985.39 the Arbitrator awarded, Petitioner argues that she is entitled to $17,432.85 in costs, including "process server fees, deposition/hearing transcript costs, mail/messenger services, and westlaw/pacer charges."[7] (Pet.'s Br. at 12, 13.) Aside from citing to cases where such costs were awarded, Petitioner makes no showing as to how these costs relate to her sole successful claim and why she is entitled to them, other than to broadly and summarily state that "all costs incurred were reasonable . . . and should have been reimbursed."[8] (Pet.'s Br. at 14.) Instead, Petitioner argues that it is "inequitable" that the Arbitrator relied on certain items in rendering his decision, such as transcripts from all five days of hearings, which Petitioner provided, but failed to award costs for such items. (Id. at 12.) Without providing any authority for how this would render the awarded costs so unreasonable as to constitute manifest disregard of the law, Petitioner speculates that vacatur is warranted because the Arbitrator's "analysis of what costs were incidental to the prosecution of this action seemed to be unduly and prejudicially influenced by the amount [Petitioner] recovered in damages . . . ." (Pet.'s Br. at 12.) There is neither factual nor legal support for this statement.

---

[7] As Respondents point out, Petitioner "appears to be of the view that 'reasonable' costs mean 'all' costs." (Resp.'s Br. at 16.) Respondents further suggest that the costs awarded may in fact be overly generous, since "only a tiny fraction of Deborah Jackson's testimony pertained to DeNota" while the Arbitrator nevertheless awarded costs for both days of her deposition testimony and for the entire day of hearing testimony for the day Jackson testified, despite the fact that Jackson was not the sole witness who testified that day. (Resp.'s Br. at 17 n.7.)

[8] Petitioner does make reference to the fact she "reasonably relied on an expert (Dr. Michelle Paludi) in advancing her hostile work environment claims" and that she should be reimbursed for the expert's services. (Pet.'s Br. at 13.) Petitioner does not explain, however, this expert's role in the development of the claims as they related to DeNota. Indeed, the record suggests that Dr. Paludi had nothing to do with this claim. Based on the Arbitrator's search through the arbitration transcript, it does not appear that DeNota was ever meaningfully referenced in Dr. Paludi's testimony. (Fee Award at 8 ("No witness but Ms. Jackson[] discussed Mr. DeNota in any depth.").) The Arbitrator further noted that Petitioner "did not identify any continuing psychological distress resulting from Mr. DeNota's statements," (Opinion & Award at 46), and that Petitioner "apparently made no mention of Mr. DeNota's behavior" to Dr. Paludi. (Fee Award at 6.) Petitioner has thus not established why denying costs associated with Dr. Paludi was so unreasonable as to amount to a manifest disregard of the law.

Petitioner has failed to establish that the Arbitrator manifestly disregarded the law in awarding costs.

### C. Fees on Fees

Next, Petitioner seeks vacatur of the Arbitrator's refusal to award fees for time spent on making the fee application itself, referred to as "fees on fees." See Dzugas-Smith v. Southold Union Free School Dist., No. 07-CV-3760-JS, 2010 WL 3852003, at *2 (S.D.N.Y. Sept. 27, 2010); (Pet.'s Br. at 9.) The Arbitrator declined to award fees on fees because Petitioner's "application for attorneys' fees was almost entirely unsuccessful . . . ." (Fee Award at 11.) Petitioner argues that this conclusion "manifestly disregards the existing law that mandates an award for 'fees on fees.'" (Pet.'s Br. at 9.) Petitioner is mistaken.

While Petitioner is correct that, generally, "a plaintiff entitled to attorney's fees pursuant to Admin. Code § 8-502[(g)] may also recover the value of the services provided by her attorney in making the application," McIntyre, 672 N.Y.S.2d at 234, such an award is not automatic or mandatory. A fees on fees award is to be evaluated "no differently from the costs of litigating the underlying case." Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist., 71 F.3d 1053, 1059 (2d Cir. 1995). Therefore, the Supreme Court has instructed that, because Hensley "requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163 n.10 (1990).

This is the case here. In his Opinion and Award, the Arbitrator indicated that he was already prepared to award attorneys' fees for the work Petitioner's attorneys "performed concerning [her] claims about Mr. DeNota." (Opinion & Award at 46.) In her fee application, Petitioner, instead of segregating out the fees incurred for the DeNota Claim, argued that she was "entitled to

an award of fees above and beyond the time expended on the claims related to Mr. DeNota." (Fee Award at 5, 10; see also Resp.'s Br. at 15 (Petitioner "refused to show that any of her claimed fees and costs were incurred in connection with the DeNota incident, but instead . . . [sought] the entire amount of attorneys' fees and costs incurred . . . ." (emphasis in original)).) As discussed above, the Arbitrator rejected this argument in its entirety, only awarding fees related to the successful DeNota Claim – that is, those fees that he had already committed to awarding in the Opinion and Award, prior to Petitioner's fee application. As the Supreme Court instructed in Jean, Petitioner should not receive fees for her overwhelmingly unsuccessful fee application.[9]

Petitioner has thus failed to establish that the Arbitrator manifestly disregarded the law in denying her application for fees on fees.

### D. Interest

Lastly, Petitioner argues that the Arbitrator erred in not granting her interest on the award of costs. (Pet.'s Br. at 11, 13.) The Court finds that, as discussed above, while the cost award will not be vacated, statutorily mandated post-award pre-judgment interest shall be applied not only to the cost award but to all money awards granted by the Arbitrator. Additionally, mandatory post-judgment interest shall also be awarded.

1. Petitioner's Request for Interest on Costs

In a diversity case such as this one, pre-judgment interest is governed by state law. Global Reinsurance Corp. of Am. V. Argonaut Ins. Co., 634 F. Supp. 2d 342, 350 (S.D.N.Y. 2009). Under New York law, pre-judgment interest can be divided into two periods: pre-award pre-judgment interest, governed by New York Civil Practice Law and Rules ("CPLR") § 5001, and post-award

---

[9] Even if the Court disagreed with the Arbitrator's ultimate determination that no fees on fees were warranted at all, such a disagreement would not be sufficient to find "manifest disregard." Petitioner has not established, as she must, that the Arbitrator ignored the applicable law, or that his decision lacks at least a "barely colorable justification." T.Co Metals, 592 F.3d at 339.

pre-judgment interest, governed by CPLR § 5002. <u>Finger Lakes Bottling Co., Inc. v. Coors Brewing Co.</u>, 748 F. Supp. 2d 286, 290 (S.D.N.Y. 2010).

While it is not exactly clear, Petitioner appears to be seeking pre-award pre-judgment interest on her cost award, since she claims that counsel has been "out-of-pocket for those costs for a substantial period of time." (Pet.'s Br. at 13 (quoting <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 548 (S.D.N.Y. 2008).)  While <u>Rozell</u>, relied upon by Petitioner, did award interest on costs, that case did not analyze New York authority on pre-judgment interest. <u>See Rozell</u>, 576 F. Supp. 2d at 547-48. CPLR § 5001 provides that pre-award pre-judgment interest "shall be recovered upon a sum awarded because of a breach of . . . contract or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." CPLR § 5001(a). Here, the "sum awarded" was "because of" a violation of the CHRL. This was neither a breach of contract action nor an action involving property, so CPLR § 5001 does not apply. <u>See McIntyre</u>, 672 N.Y.S.2d at 236 (no pre-award pre-judgment interest under CPLR § 5001 for discrimination claim brought pursuant to the CHRL); <u>see also</u>, <u>McIntosh v. Irving Trust Co.</u>, 873 F. Supp. 872, 881-82 (S.D.N.Y. 1995) (CPLR § 5001 is limited to contract and property actions and does not apply to the SHRL).

To the extent that Petitioner is arguing that the Arbitrator should have exercised his discretion in awarding interest, under New York law, where an arbitrator could have awarded pre-award pre-judgment interest but did not, the court may not do so when entering judgment on an arbitration award. <u>See, e.g.</u>, <u>Moran v. Arcano</u>, No. 89-CV-6717-CSH, 1990 WL 113121, at *2 (S.D.N.Y. July 27, 1990) ("Arbitrators may in their discretion provide for pre-award interest . . . but 'if the award is silent on pre-judgment interest, a court is not entitled to award such interest.'" (quoting <u>In re Gruberg</u>, 531 N.Y.S.2d 557, 558 (1st Dep't 1988))).

Post-award pre-judgment interest, however, is mandatory under New York law. CPLR §

5002 states that "[i]nterest shall be recovered upon the total sum awarded, including interest to

verdict, report or decision, in any action, from the date the verdict was rendered or the report or

decision was made to the date of entry of final judgment." CPLR § 5002. "Interest under CPLR

5002 is a matter of right and is not dependent upon the court's discretion or a specific demand for

it in the complaint." Goldberger v. Fischer, 864 N.Y.S.2d 143, 144 (2d Dep't 2008) (internal

quotation marks omitted); see also Tucker Leasing Capital Corp. v. Farber, 882 F. Supp. 1290,

1294 (E.D.N.Y. 1995) (CPLR § 5002 "provides for automatic entry of post-decision interest by

the Clerk of the Court"). An arbitration award is considered a "verdict, report or decision" under

CPLR § 5002, Ganfer & Shore, LLP v. Witham, No. 10-CV-4075-DAB-KNF, 2011 WL 321151,

at *7 (S.D.N.Y. Jan. 6, 2011) report and recommendation adopted, 2011 WL 308407 (S.D.N.Y.

Jan. 28, 2011), and awards of costs and attorneys' fees are properly subject to CPLR § 5002. See

Quill v. Cathedral Corp., 659 N.Y.S.2d 919, 921 (3d Dep't 1997) (decision stating "petitioners'

entitlement to costs, including counsel fees . . . established respondent's liability for those costs

within the meaning of CPLR 5002"); Simmons v. New York City Transit Auth., No. 02-CV-1575-

CPS, 2008 WL 3251391, at *2 (E.D.N.Y. July 31, 2008) ("Under New York law plaintiff may

receive pre-judgment interest on the award of attorney's fees."). CPLR § 5004 provides that "in-

terest shall be at the rate of nine per centum per annum . . . ." CPLR § 5004.

Petitioner is therefore entitled to post-award pre-judgment interest at an annual rate of 9%

on her cost award. While the exact amount of costs was not determined until the issuance of the

Fee Award on May 27, 2014, Petitioner became entitled to costs and Respondents liable for them

at the time of the Opinion and Award on March 12, 2014. (See Fee Award at 11 ("although the

[Opinion and Award] only awarded fees, costs should have been included").) Therefore, interest

23

on costs shall be calculated from March 12, 2014 to the entry of final judgment. See Simmons, 2008 WL 3251391, at *2 (awarding interest on attorneys' fees pursuant to CPLR § 5002 as of the date "plaintiff's right to attorney's fees and costs was established" (emphasis added)); cf. Schipani v. McLeod, 541 F.3d 158, 164-65 (2d Cir. 2008) (where "liability and damages are determined in separate verdicts rendered on different dates, the New York Court of Appeals has held that the right to interest accrues upon the entry of 'the verdict holding the defendant liable' since that is when 'plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law'" (quoting Love v. State, 78 N.Y.2d 540, 544 (1991))).

### 2. Pre-Judgment Interest on Other Parts of the Arbitral Award

For the reasons just discussed, post-award pre-judgment interest shall also be applied to the award for attorneys' fees, as well as to the amounts awarded in the Opinion and Award, from March 12, 2014 to the entry of final judgment.[10]

### 3. Post-Judgment Interest

"In a diversity action to confirm an arbitration award, the post-judgment rate is calculated in accordance with the federal rate under 28 U.S.C. § 1961(a)." PremiereTrade Forex, LLC v. FXDirectDealer, LLC, No. 12-CV-7006-PAC, 2013 WL 2111286, at *8 n.9 (S.D.N.Y. May 16, 2013). "Post-judgment interest is awarded as a matter of course for any money judgment . . . ." Syrnik v. Polones Const. Corp., No. 11-CV-7754-KBF, 2012 WL 4122801, at *4 (S.D.N.Y. Sept. 19, 2012). Petitioner is therefore entitled to post-judgment interest from the entry of final judgment until it is paid, at the rate provided for in 28 U.S.C. § 1961(a).

---

[10] As mentioned above, because pre-award pre-judgment interest is not available on an award "granted in a discrimination claim brought pursuant to . . . the . . . City Human Rights Law[]," no such interest will be applied to the sum awarded in the Opinion and Award. McIntyre, 672 N.Y.S.2d at 236.

### III.    Sanctions

In their opposition brief, Respondents request that the Court impose sanctions against Petitioner and her counsel.  (Resp.'s Br. at 17.)  First, they argue that Petitioner committed sanctionable "misconduct" by not providing this Court with the Arbitrator's Opinion and Award in an attempt to "hide from view . . . the most important document in the record." (Id.)  Additionally, Respondents claim that Petitioner "transparently attempts to relitigate the same positions considered and rejected by the Arbitrator, simply because she is unhappy with the outcome" and that Petitioner has forced Respondents to oppose and re-oppose "a fee application which completely disregarded the Arbitrator's express instructions" to limit fees to the successful DeNota Claim. (Id.)

It is unclear what authority Respondent relies on in making its request, although based on their citation to DigiTelCom, Ltd. v. Tele2 Sverige AB, No. 12-CV-3082-RJS, 2012 WL 3065345 (S.D.N.Y. July 25, 2012), which addressed sanctions under 28 U.S.C. § 1927, the Court will assume Respondents are proceeding pursuant to that statute.

29 U.S.C. § 1927 provides that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  To impose such a sanction, a court must "find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." DigiTel-Com, 2012 WL 3065345, at *6 (internal quotation marks omitted).  Bad faith "may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (internal quotation marks omitted).

Petitioner's failure to submit the Opinion and Award to this Court does not rise to bad faith misconduct. As an initial matter, Petitioner addressed this omission in its opening brief, stating that "[b]ecause Plaintiff is not requesting the Court to vacate the preliminary award, the [Opinion and Award] is omitted in this motion." (Pet.'s Br. at 4 n.2.) It is true that this statement is somewhat puzzling since – aside from the obvious reason that this document forms an integral part of the record – Plaintiff in the same motion is also requesting that the Opinion and Award be confirmed. (Pet.'s Br. at 21.) Nevertheless, the Court cannot conclude that Petitioner's omission was necessarily motivated by improper purposes. For one, it is difficult to see what Petitioner could have gained from "hiding" the Opinion and Award, of which this Court was obviously well aware. Moreover, the Fee Award, while not delving into the details with as much specificity as the Opinion and Award, amply explains "the relative insignificance of the DeNota incident" and "the express limitation on the recoverability of attorneys' fees and costs" -- the precise information Respondents claim Petitioner was seeking to hide. (Resp.'s Br. at 17.) While the omission of the Opinion and Award was perhaps misguided, the Court declines to impose sanctions on that basis.

As to Petitioner's purportedly "unreasonable and vexatious" multiplication of proceedings, the Court likewise cannot conclude that Petitioner filed this motion in bad faith. While Petitioner's motion is unsuccessful, it cannot be said that her arguments were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." DigiTelCom, 2012 WL 3065345, at *6 (internal quotation marks omitted).

The Court therefore denies Respondents' request for sanctions.

## CONCLUSION

The Arbitrator's awards are confirmed. Pursuant to the Opinion and Award, Respondent Pier 59 shall pay Petitioner the sum of $5,000 and shall reimburse Petitioner the sum of $200, representing the portion of administrative fees and expenses in excess of the apportioned costs previously incurred by Petitioner. Pursuant to the Fee Award, Respondent Pier 59 shall pay Petitioner the sum of $10,459.39 in attorneys' fees and costs. Pre-judgment interest shall be assessed on these awards at the annual rate of 9% from March 12, 2014 to the entry of judgment. Post-judgment interest shall be assessed from the entry of judgment to when the sums are paid, at the rate provided for in 28 U.S.C. § 1961(a).

Respondent's request for sanctions is denied. The Clerk of Court is directed to terminate any pending motions and to close this case.

SO ORDERED.

Dated: March 5, 2015
   New York, New York

             Ronnie Abrams
             United States District Judge